**IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA**

2023 January Term

_____

No. 22-ICA-138

_____

**FILED**

**March 6, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

PRIMECARE MEDICAL of WV, INC.,
Employer Below, Petitioner

v.

BRITTANY FOSTER,
Claimant Below, Respondent

_____

Appeal from the Workers' Compensation Board of Review

(JCN: 2021009577)

VACATED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 24, 2023

Filed: March 6, 2023

Mark R. Simonton, Esq.
Alex S. Blevins, Esq.
Offutt Simmons Simonton, PLLC
Huntington, West Virginia
Counsel for Petitioner

Lori Withrow, Esq.
Reginald D. Henry, Esq.
Reginald D. Henry, PLLC
Mabscott, West Virginia
Counsel for Respondent

CHIEF JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, Chief Judge:

Petitioner, PrimeCare Medical of West Virginia, Inc., ("PrimeCare") appeals the August 29, 2022, Workers' Compensation Board of Review's ("BOR") reversal of the claim administrator's order, finding Respondent, Brittany Foster's ("Ms. Foster") workers' compensation COVID-19 claim compensable and awarding her temporary total disability benefits.

We find that the Board of Review's order failed to provide sufficient findings of fact and conclusions of law to support the ruling. West Virginia Code § 23-4-1(f) (2021)[1] provides that no ordinary disease of life to which the general public is exposed outside of employment is compensable under workers' compensation unless the disease was incurred in the course of and resulted from employment. To make such a determination, a detailed analysis of the six factors listed in West Virginia Code § 23-4-1(f) must be completed. As no such analysis was completed by the BOR, we vacate the BOR's final order and remand this case with direction to make specific findings of fact and conclusions of law for each of the individual factors under West Virginia Code § 23-4-1(f).

---

[1] While West Virginia Code § 23-4-1 was amended in 2021, the criteria set forth in West Virginia Code § 48-9-401(f) (2021) remains the same as the 2018 version, which was in effect at the initial filing for workers' compensation benefits.

1

## I.      Facts and Procedural History

Ms. Foster was employed by PrimeCare as the Health Services Administrator at Southern Regional Jail. From July 27, 2020, to July 31, 2020, among other things, Ms. Foster administered COVID-19 tests to inmates and staff in the medical unit of Southern Regional Jail. When testing, Ms. Foster wore full personal protective equipment including an N95 mask. On July 30, 2020, Ms. Foster attended a management staff meeting with the heads of each department in the jail.[2] On August 3, 2020, PrimeCare sent everyone who attended the July 30, 2020, meeting home to quarantine until August 7, 2020, due to members of the staff testing positive for COVID-19. While Ms. Foster was to be quarantined due to possible COVID-19 exposure, she engaged in several non-work related activities, including an August 1, 2020, trip to a drive-through zoo with her mother, father, and two nieces and a visit to the emergency room on August 4, 2020. On August 4, 2020, Ms. Foster submitted to a COVID-19 test at Summers County Appalachian Regional Healthcare Hospital, which was negative. On August 11, 2020, Ms. Foster took a second COVID-19 test, which was positive. Ms. Foster was hospitalized from August 11, 2020, to August 24, 2020, due to pneumonia. As of August 20, 2020, Ms. Foster tested negative for COVID-19.

Ms. Foster's medical records note that she has a history of recurrent bronchitis, suffers from morbid obesity, and had an issue with sinus tachycardia over the last few

---

[2] Evidence of all attendees wearing masks appears conflicting.

years. Beginning August 31, 2020, and continuing through March 9, 2022, Ms. Foster underwent treatment from multiple doctors for COVID-19, major depressive disorder, morbid obesity, asthma, congestive heart failure, dyspepsia, and tachycardia.

On September 22, 2020, Ms. Foster completed the West Virginia Workers' Compensation Employees' and Physicians' Report of Occupational Injury or Disease ("WC-1") form alleging direct COVID-19 exposure while at work on July 30, 2020. The physician's portion of the WC-1 form was completed by Ajay Anand, M.D. Dr. Anand diagnosed Ms. Foster with COVID-19 but indicated "N/A" in response to whether the condition was a direct result of employment. On October 22, 2020, Ms. Foster completed a second WC-1 form again alleging direct COVID-19 exposure while at work. The physician's portion of the second WC-1 form was completed by Matthew Haag, D.O. In the form, Dr. Haag indicated "non-occupational condition" in response to whether the condition was a direct result of employment. On March 1, 2022, the claim administrator denied Ms. Foster's claim for COVID-19. This order was appealed.

On March 9, 2022, Bruce Guberman, M.D., conducted an independent medical evaluation of Ms. Foster. Dr. Guberman determined that Ms. Foster's contraction of COVID-19 was an "occupational disease" based on the medical records and medical history reported by Ms. Foster. Dr. Guberman was subsequently deposed and acknowledged that no medical or scientific tests were available to determine the exact source of Ms. Foster's COVID-19 infection.

On April 14, 2022, Thomas Parker, M.D., issued a medical review opining that Ms. Foster had COVID-19 in August of 2020, but that the condition was not an occupational disease. Further, Dr. Parker opined that Ms. Foster recovered from COVID-19 pneumonia very quickly based on the total lung capacity pulmonary function test from September 1, 2020. Dr. Parker attributed Ms. Foster's continuing pulmonary problems to asthma and tachycardia, which were well established in her medical records and pre-dated her COVID-19 diagnosis.

On August 29, 2022, the BOR reversed the claim administrator, held Ms. Foster's workers' compensation claim compensable for COVID-19, and awarded her temporary total disability benefits from August 10, 2020, through March 9, 2022, to continue thereafter as substantiated by proper medical evidence. It is from this order that PrimeCare now appeals.

## II.     Standard of Review

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;

(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, No. 22-ICA-10, _____ W. Va. _____, _____, 883 S.E.2d 916, 921, (Ct. App. 2022).

## III.    Discussion

On appeal, PrimeCare asserts that the BOR committed clear legal error in its determination that Ms. Foster's diagnosis of COVID-19 was causally related to her employment at PrimeCare. PrimeCare argues that COVID-19 is a communicable disease of ordinary life and, accordingly, is not compensable under the workers' compensation statutory scheme.

To begin our analysis, we recognize the burden individuals, employers, legislators, governors, and courts across the nation face in the wake of the COVID-19 pandemic and the resultant COVID-19 related workers' compensation claims. In the context of workers' compensation, sixteen states have addressed COVID-19 compensability by either codifying new statutory language or issuing executive orders creating rebuttable presumptions of occupational illness.[3] Some states have limited the duration of the

---

[3] The following states have either by legislative mandate, administrative policy change, or executive order created some form of rebuttable presumption of the compensability of COVID-19: Arkansas, California, Florida, Illinois, Kentucky, Minnesota, Missouri, New Jersey, New Mexico, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, and Wyoming.

presumption based on a date certain.[4] Others have limited the presumption to certain employment categories.[5]

While some state legislatures have taken a proactive role in addressing COVID-19 in the context of workers' compensation, others have relied on guidance from the courts. A limited number of appellate courts have addressed the compensability of COVID-19 in workers' compensation. The findings of these courts, at present, are divided as to the compensability of COVID-19.[6]

In March of 2021, the West Virginia Legislature enacted, as part of the COVID-19 Job Protection Act, West Virginia Code § 55-19-6, which provided, in part, that:

> [w]hen a claim for workers' compensation benefits is awarded to an employee [...] for work -related injury, disease, or death caused by or arising from COVID-19 in the course of and resulting from covered employment, such claim for workers' compensation benefits shall be the sole and exclusive

---

[4] Vermont's presumption terminated July 15, 2021. *See* VT. ST. T. TWENTY-ONE, Ch. 9, Refs & Annos.

[5] Utah limited the presumption to first responders. *See* UT. Code § 34A-3-202 (2020).

[6] At the time of the issuance of this opinion, only New York, Ohio, and Delaware courts have discussed COVID-19 compensability as an occupational disease within their respective workers' compensation frameworks. New York has found compensability, while Ohio has denied compensability. *See Fowler v. Perdue Farms., Inc.*, C.A. No. K21A-01-002 NEP, 2022 WL 807327 (Del. Sup. Ct. March 16, 2022); *Pierre v. ABF Freight*, 2022 N.Y. Slip Op. 07118, ____ N.Y.S.3d ____, 2022 WL 17683470 (N.Y. App. Div. Dec. 15, 2022); and *Yeager v. Ariconic Inc.*, No. 2021-T-0052, 2022 WL 2114656 (Ohio Ct. App. June 13, 2022).

remedy for such injury, disease, or death and the immunity from suit provided under § 23-2-6 and § 23-2-6a of this code shall be and remain in full force and effect.[7]

Significantly, this legislation did not create a rebuttable presumption of COVID-19 compensability. The Legislature has created rebuttable presumptions codified within the West Virginia workers' compensation statutory framework in the past.[8] The absence of such language in the COVID-19 Job Protection Act or any other legislation leaves the determination of compensability of COVID-19 as an issue to be determined and assessed on a case-by-case basis through the existing West Virginia workers' compensation system. *See* W.Va. Code §§ 23-1-1 to 23-6-3.

Generally, under West Virginia's workers' compensation statutory framework, for a claim to be held compensable, three elements must coexist: (1) a personal injury (2) received in the course of employment, and (3) resulting from that employment. *See* Syl. Pt. 1, *Barnett v. State Workman's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970).

---

[7] On January 19, 2021, the West Virginia Office of the Insurance Commissioner issued Insurance Bulletin No. 21-01 which directed, in part, that workers' compensation claims for COVID-19 should not be summarily refused, denied, or rejected outright due to the nature of the injury alone without proper investigation, which is consistent with this Court's opinion.

[8] For example, West Virginia Code § 23-4-1(h) creates a rebuttable presumption of workers' compensation compensability for professional firefighters who develop certain cardiovascular or pulmonary diseases.

West Virginia Code § 23-4-1(f) provides that no ordinary disease of life to which the general public is exposed outside of the employment is compensable, except when it follows as an incident of occupational disease. To determine if an ordinary disease of life follows as an incident of occupational disease, a six-factor analysis must be completed, and all factors must be met. *Id.*

> A disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction: *Provided,* That compensation is not payable for an occupational disease or death resulting from the disease unless the employee has been exposed to the hazards of the disease in the State of West Virginia over a continuous period that is determined to be sufficient, by rule of the board of managers, for the disease to have occurred in the course of and resulting from the employee's employment.

*Id.*

With this statutory framework in mind, we hold that although there is no prohibition on a claim for workers' compensation benefits arising from or relating to COVID-19, it is generally not compensable, as it is a disease of ordinary life, unless the six factors contained in § 23-4-1(f) are met. While this undoubtedly creates a high burden on the claimant in establishing his or her case, it does not bar the compensability of COVID-19 claims when this burden is met.

When reviewing the record before us, we find that the BOR's order is insufficient in that it does not discuss each of the six factors outlined in West Virginia Code § 23-4-1(f).[9] The only discussion relating to the six-factor test contained within the BOR's final order is one brief paragraph that summarily states:

> The claimant established that that there is a direct casual connection between the conditions under which her work as a medical professional at the jail is performed and COVID; that it can be seen to have followed as natural incident of the work as a result of the exposure to COVID positive patients and co-employees whom she tested for COVID; that it can be fairly traced to the employment as the proximate cause; that it does not come from a hazard to which a medical professional would have been equally exposed outside of the employment; that it is incidental to the character of the business and not independent of the relation of an employer and employee; and that it appears to have had its origin in the risk connected with working as a medical professional and to have flowed from that source as a natural consequence.

The BOR did not apply the factors to the instant case but, instead, simply recited the statutory language to support its determination that Ms. Foster met her burden. However, to facilitate meaningful appellate review, we hereby hold that any decisions by the BOR addressing West Virginia Code § 23-4-1(f) must discuss in detail each of the six factors and address whether the claimant has satisfied his or her burden to prove the presence of each factor.[10] Such analysis was not completed by the BOR with respect to Ms. Foster's underlying claim.

---

[9] Ms. Foster's counsel conceded this insufficiency during oral argument before this Court.

[10] If determined that the claimant has failed to satisfy one of the factors contained in W. Va. Code § 23-4-1(f), then further analysis is unwarranted.

This lack of meaningful discussion is especially problematic given the evidence in the record, relevant to factor four. Specifically, PrimeCare introduced into the record an article published on March 10, 2021, titled *Risk Factors Associated with SARS-CoV-2 Seropositivity Among US Health Care Professionals*. This article "found that the factors presumed to be most associated with [COVID-19] infection risk among [health care personnel], including workplace role, environment, and caring for [COVID-19] patients, were not associated with increased [health care personnel] risk of [COVID-19] infection."[11] As the only medical study in the record, this evidence cuts against a finding of compensability under factor four. Ms. Foster bears the burden to prove her case and refute contrary evidence placed into the record such as this article. Mere speculation that a medical professional is at a greater risk of exposure than those outside of such employment is insufficient to satisfy factor four. Evidence must be presented, and the BOR must address this evidence in meaningful findings of fact and conclusions of law.

While factor four most critically lacks discussion in light of the record, we find that every factor requires a detailed analysis of the particular facts. For example, the BOR determined that Dr. Guberman's assessment that Ms. Foster's COVID-19 infection was most likely related to exposure at work, was more reliable than those of Drs. Anand and Haag. However, the BOR failed to discuss its reasons for such a determination. Dr. Anand and Dr. Haag were the treating physicians of Ms. Foster but neither considered her

---

[11] Finding of fact No. 27 in the BOR's final order.

contraction of COVID-19 to be occupationally related. The decision also lacks discussion of Ms. Foster's activities, both work and non-work related, which could have exposed her to COVID-19. When considering the timeline of events, Ms. Foster has potential exposure while COVID-19 testing as part of her employment duties, while attending a required staff meeting, while visiting the emergency room, and while out with family. Nothing in the BOR's order discusses why Ms. Foster's potential exposure at work was more likely than not the cause of contracting COVID-19 compared to the other potential exposures. The decision also fails to meaningfully discuss the relationship of the timing of the onset of Ms. Foster's symptoms and eventual positive test to her potential exposures.

### IV.    Conclusion

Accordingly, we vacate the BOR's August 29, 2022, final order, and remand this matter to the BOR for a thorough analysis of the six factors in West Virginia Code § 23-4-1(f) so that compensability of Ms. Foster's COVID-19 claim can be determined. The Clerk is directed to issue the mandate contemporaneously with this opinion.

Vacated and Remanded with Directions.